IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MUNICIPAL PARKING SERVICES, INC. | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | JURY DEMAND |
| PARKING REVENUE RECOVERY | ) | |
| SERVICES, INC., LAZ KARP ASSOCIATES, | ) | |
| LLC and LAZ PARKING TEXAS, LLC, | ) | |
| | ) | |
| *Defendants.* | | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Municipal Parking Services, Inc. ("MPS") brings this action against Defendant

Parking Revenue Recovery Services, Inc. ("PRRS"), and Defendants LAZ Karp Associates, LLC

and LAZ Parking Texas, LLC, and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for patent infringement of U.S. Pat. No. 10,121,172 (Exhibit 1),

U.S. Pat. No. 11,257,302 (Exhibit 2), U.S. Pat. No. 11,688,205 (Exhibit 3), U.S. Patent No.

12,142,085 (Exhibit 4), and U.S. Patent No. 12,249,187 (Exhibit 5) (collectively, the "Patents-in-

Suit").

2.     Plaintiff MPS develops and sells innovative automated parking technology

platforms that are now deployed in parking facilities and on streets across North America. The

Patents-in-Suit were awarded to MPS to protect these revolutionary parking technology

platforms.

3.     Upon information and belief, Defendants are engaged in making, using, offering

for sale, selling, importing, or otherwise providing, within the United States and in particular the

State of Texas and this District, automated parking monitoring and management systems/services and in so doing are infringing, directly or indirectly, claims of the Patents-in-Suit, and Defendants continue to do so willfully and without authorization.

4.      MPS seeks to recover damages, attorney's fees, and costs arising from Defendants' infringement of MPS's patented technology. MPS also seeks an injunction against further infringement by Defendants.

## THE PARTIES

5.      Plaintiff MPS is a Minnesota corporation having a place of business at 11305 Four Points Dr., Building 2, Suite 300, Austin, Texas.

6.      MPS is the owner of the Patents-in-Suit.

7.      MPS develops, markets, and sells innovative parking solutions that are deployed by cities, municipalities, and private parking facility operators.

8.      Upon information and belief, Defendant PRRS is a Colorado corporation with a principal place of business located at 6025 S. Quebec St., Suite 350, Greenwood Village, CO.[1]

9.      Upon information and belief, PRRS also has and maintains regular and established places of business in this District, including in the city of Austin, Texas.

10.     Upon information and belief, PRRS may be served with process by serving its registered agent, Incorp Services, Inc., 815 Brazos Street, Ste. 500, Austin, Texas 78701.[2]

11.     Upon information and belief, Defendant LAZ Karp Associates, LLC is an entity

---

[1]https://www.sos.state.co.us/biz/BusinessEntityDetail.do?quitButtonDestination=BusinessEntity
Results&nameTyp=ENT&masterFileId=20051367126&entityId2=20051367126&fileId=200513
67126&srchTyp=ENTITY

[2] https://mycpa.cpa.state.tx.us/coa/coaSearchBtn (Texas Comptroller of Public Accounts Franchise Tax Account search)

organized under the laws of Connecticut with a principal place of business at 1 Financial Plaza, Floor 14, Hartford, Connecticut 06103.[3]

12.    Upon information and belief, LAZ Karp Associates, LLC also has and maintains a regular and established place of business in this District, including at 515 Congress Ave, Suite 2240, Austin, Texas.[4]

13.    Upon information and belief, LAZ Karp Associates, LLC may be served through its registered agent located at Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.[5]

14.    Upon information and belief Defendant LAZ Parking Texas, LLC is a limited liability company organized under the laws of Texas with a principal place of business at 1 Financial Plaza, Floor 14, Hartford, Connecticut.

15.    Upon information and belief, LAZ Parking Texas, LLC has and maintains a regular and established place of business in this District, including at 515 Congress Ave, Suite 2240, Austin, Texas.

16.    Upon information and belief, LAZ Parking Texas, LLC may be served through its registered agent located at Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.[6]

---

[3] https://service.ct.gov/business/s/onlinebusinesssearch?businessNameEn=CaTRAeKxiYdK5JcXITGABE%2F%2BVli2uQXMDkQP%2FuT%2BqOk%3D&language=en_US

[4] https://www.lazparking.com/our-company/about/contact-us#ntx

[5] https://comptroller.texas.gov/taxes/franchise/account-status/search/12611647087 (Texas Comptroller of Public Accounts Franchise Tax Account search)

[6] https://mycpa.cpa.state.tx.us/coa/coaSearchBtn (Texas Comptroller of Public Accounts Franchise Tax Account search)

17.     Upon information and belief, LAZ Parking Texas, LLC is wholly owned by, and/or acts as the agent of, and/or is dominated, controlled and directed by, and/or acts as a mere instrumentality of, LAZ Karp Associates, LLC. For example, LAZ Parking Texas, LLC lists a principal place of business located at the same address as LAZ Karp Associates, LLC (1 Financial Plaza, Floor 14, Hartford, Connecticut);[7] Alan Lazowski is listed as the CEO and Director of both LAZ Parking Texas and LAZ Karp Associates, LLC on the Texas Secretary of State website; and LAZ Parking's business website also lists Mr. Lazowski as Chairman and CEO of LAZ Parking. LAZ Karp Associates, LLC and LAZ Parking Texas, LLC are referred to collectively hereinafter as "LAZ Parking".

18.     Upon information and belief, LAZ Parking owns, controls, and/or operates parking lots throughout the United States and has contracted with PRRS for PRRS's "ARC" automated parking monitoring and management systems/services at parking facilities LAZ Parking operates, including facilities in this District and specifically in Austin, Texas.

## JURISDICTION AND VENUE

19.     This action arises under the Patent Act, 35 U.S.C. § 271 et seq.

20.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

21.     Jurisdiction and venue for this action are proper in this District.

22.     As discussed in greater detail below, Defendants have individually and/or jointly, committed acts of patent infringement and/or induced and/or contributed to acts of patent infringement by others in this District, the State of Texas, and elsewhere in the United States, and continue to do so willfully and without authorization by making, selling, using and/or

---

[7] https://service.ct.gov/business/s/onlinebusinesssearch?businessNameEn=8OlpzHEHTCfdR%2 BtvToZu%2BXToWSFv0GEYjLuZpsnbNy0%3D

inducing others to use or contributing to others' use of automated parking monitoring and management systems/services that infringe claims of the Patents-in-Suit and/or have no substantial non-infringing use.

23.     This Court has personal jurisdiction over Defendant PRRS at least because, through PRRS's own acts and/or through the acts of each other Defendant or customer acting as its agent, representative, or alter ego, PRRS (i) has a presence or regular and established place of business in the State of Texas and this District; (ii) has purposefully availed itself to the privileges of conducting business in the State of Texas and this District; (iii) has done and is doing substantial business in the State of Texas and this District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including committing (directly or indirectly) one or more acts of infringement in the State of Texas and this District; (iv) maintains continuous and systematic business contacts in the State of Texas and this District; and/or (v) provides automated parking monitoring and management systems/services alleged to be infringing in this Complaint, directly or through intermediaries, with awareness that such systems/services are likely destined for use, offer for sale, and/or use in the State of Texas and in this District.

24.     Upon information and belief, PRRS is registered to do business in Texas with the Texas Comptroller of Public Accounts.[8] Upon information and belief, PRRS may be served with process by serving its registered agent, Incorp Services, Inc., located in this District at 815 Brazos Street, Ste. 500, Austin, TX 78701.[9]

---

[8] https://mycpa.cpa.state.tx.us/coa/coaSearchBtn (Texas Comptroller of Public Accounts Franchise Tax Account search)

[9] https://mycpa.cpa.state.tx.us/coa/coaSearchBtn (Texas Comptroller of Public Accounts Franchise Tax Account search)

25.    Upon information and belief, PRRS does regularly and continuously do business in Texas and in this District.

26.    Upon information and belief, PRRS maintains regular and established places of business in this District, including in the cities of Austin, Texas and San Antonio, Texas.

27.    For example, upon information and belief PRRS installs and operates parking monitoring equipment at parking facilities in at least Austin, Texas and San Antonio, Texas and issues parking violation notices to individuals using such parking facilities. See, for example, Exhibit 17 (post titled "Prrs (parking revenue recovery services) scam", with message including "Parked in a LAZ lot and I got the dreaded notice of 'non' compliance" from "r/Austin" post); Exhibit 18 (PRRS "ticket" in San Antonio).

28.    For example, upon information and belief PRRS installs and operates parking monitoring equipment, including but not limited to permanently installed parking cameras, at fixed locations within parking facilities in Austin, Texas, including but not limited to facilities located at:

- 510 Guadalupe Street, Austin, Texas
- 108 W. Gibson, Austin, Texas
- 305 S. Congress Avenue, Austin, Texas
- 400 Congress Avenue, Austin, Texas
- 400 E 8th Street, Austin, Texas
- 415 E 7th Street, Austin, Texas
- 99 Trinity Street, Austin, Texas

29.    For example, John Conway, on information and belief PRRS's co-founder, has stated that that PRRS is "installing the system" at parking facilities of its customers.

https://www.facebook.com/Parkingprrs/videos/768476596907647, at 1:00.

30.    Upon information and belief, PRRS also issues parking violation notices associated with the locations identified in paragraph 28.

31.     For example, PRRS issued a parking violation notice associated with 510 Guadalupe Street, Austin, Texas. Exhibit 6 ("Parking Notice" by PRRS for violation at parking facility located at 510 Guadalupe Street, Austin, Texas, on 4/27/2024).

32.     Upon information and belief, PRRS also maintains employees located in this District.

33.     For example, Indeed.com displays posts regarding "Working at Parking Revenue Recovery Services" from individuals identified as located in "San Antonio, TX," "El Paso, TX," and "Austin, TX".  https://www.indeed.com/cmp/Parking-Revenue-Recovery-Services/reviews.

34.     Upon information and belief, PRRS's employees located in this District conduct PRRS's business in person and at physical parking facilities in this District.

35.     Upon information and belief, PRRS employees perform activities central to PRRS's business at physical parking facilities of PRRS's customers in this District.

36.     At least in view of the foregoing and upon information and belief, the presence of PRRS's employees in this District is important to and connected to such employees' performance of their professional responsibilities and duties in this District, and to PRRS's business in this District.

37.     Upon information and belief, PRRS has also purposefully directed its activities at residents in this District by specifically advertising, promoting, offering for sale, selling and/or distributing and continues to advertise, promote, offer for sale, sell, and/or distribute its automated parking monitoring and management systems/services used to infringe the Patents-in-Suit to customers and potential customers in this District.

38.     For example, upon information and belief PRRS has provided and continues to willfully provide infringing automated parking monitoring and management systems/services at

parking lots and/or facilities in this District, including via infringing use of its "Automated Recognition and Compliance System" ("ARC for short") at facilities in the city of Austin, Texas located at least at 510 Guadalupe Street, 108 W. Gibson, 305 S. Congress Avenue, 400 Congress Avenue, 400 E 8th Street, 415 E 7th Street, and 99 Trinity Street as explained above and further alleged below and in the attached Exhibits 11 through 15, and PRRS has derived substantial revenues from such infringement occurring within Texas and this District.

39.     The patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities. As explained above and further in the specific allegations below, on information and belief a substantial part of the events giving rise to MPS's claims against PRRS have occurred in Texas and this District.

40.     Moreover, Plaintiff MPS is a competitor of PRRS.  MPS has an office and established place of business in the State of Texas and specifically in Austin, Texas in this District, and MPS's customers and potential customers reside in the State of Texas (including in this District). Therefore PRRS's infringing acts giving rise to this lawsuit and the harm MPS has suffered have both occurred in this District.

41.     Defendant PRRS has established sufficient minimum contacts with the State of Texas and this District such that PRRS should reasonably and fairly anticipate being brought into court in the State of Texas and this District without offending traditional notions of fair play and substantial justice.

42.     Venue is proper in this District as to PRRS under 28 U.S.C. §§ 1391(b) and 1400(b).

43.     Venue is proper as to PRRS because, on information and belief, PRRS has committed acts of infringement in this District, and PRRS also has a regular and established

place of business in this District.

44.     Upon information and belief, as explained above and also as alleged further below and in attached Exhibits 11 through 15, PRRS has committed and continues to commit acts of infringement in this District, by using (individually and/or jointly with LAZ Parking or other customers) and/or inducing others to use, or contributing to others' use of, automated parking monitoring and management systems/services, including PRRS's "ARC" system/services provided at parking facilities located in this District, including at facilities located at 510 Guadalupe Street, 108 W. Gibson, 305 S. Congress Avenue, 400 Congress Avenue, 400 E 8th Street, 415 E 7th Street, and 99 Trinity Street in Austin, Texas.

45.     Upon information and belief, and also as explained above in paragraphs 26 through 43, PRRS also has a regular and established place of business in this District. Further, upon information and belief and also as explained in paragraphs 21 through 44 above, PRRS's business at its established locations in this District relate to the infringing use of PRRS' "ARC" automated parking monitoring and management systems/services.

46.     This Court has personal jurisdiction over LAZ Parking, at least because LAZ Parking (i) has a presence or regular and established place of business in the State of Texas and this District; (ii) has purposefully availed itself to the privileges of conducting business in the State of Texas and this District; (iii) has done and is doing substantial business in the State of Texas and this District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including committing (directly or indirectly) one or more acts of infringement in the State of Texas and this District; and/or (iv) maintains continuous and systematic business contacts in the State of Texas and this District.

47.     Upon information and belief, LAZ Parking Texas LLC and LAZ Karp Associates,

LLC are registered to do business in Texas with the Texas Comptroller of Public Accounts, and

each of LAZ Parking Texas and LAZ Karp Associates, LLC may be served with process by

serving its registered agent in Texas at Corporation Service Company, 211 East 7th Street, Suite

620, Austin, Texas 78701.[10]

48.     Upon information and belief, LAZ Parking does regularly and continuously do

business in Texas and in this District.

49.     Upon information and belief, LAZ Parking maintains regular and established

places of business in this District and generates substantial revenues from its business activities

in this District.

50.     For example, upon information and belief, LAZ Parking maintains a physical

office and employees in this District, including at 515 Congress Ave., Suite 2240, Austin, TX.

See, for example, https://www.lazparking.com/our-company/about/contact-us#ntx:



51.     Upon information and belief, Defendant LAZ Parking Texas LLC also owns 515

_____

[10] https://mycpa.cpa.state.tx.us/coa/coaSearchBtn (Texas Comptroller of Public Accounts
Franchise Tax Account search)

Congress Ave., Suite 2240, Austin, TX. Exhibit 8.

52.    Exhibit 8 is a true and correct copy of a property search record for 515 Congress

Ave., Suite 2240, Austin, Texas, from the website record of the Travis Central Appraisal District

of Travis County, Texas, available at https://travis.prodigycad.com/property-detail/769346/2025.

53.    As other examples, upon information and belief, LAZ Parking also maintains

regular and established places of business at parking facilities in Texas and in this District that it

operates, including monitoring and managing entry and exit to such parking facilities.

54.    LAZ Parking's website shows 58 different parking facilities available in Austin,

Texas:



https://go.lazparking.com/search-results/Austin-Texas-US?start=2025-04-

08T22%3A23%3A10.121Z&end=2025-04-09T00%3A23%3A10.121Z

55.    Upon information and belief, LAZ Parking also maintains ownership,

management, and/or control over the parking facilities shown in the preceding paragraph,

including but not limited to the means of entry and exit at such facilities.

56.    In addition, upon information and belief LAZ Parking has contracted with PRRS for PRRS to provide PRRS's automated parking monitoring and management systems/services, including PRRS's ARC system/services, at parking facilities owned, operated, managed, and/or controlled by LAZ Parking, including such facilities located in this District, the use of which systems/services infringes the Patents-in-Suit as alleged in this Complaint.

57.    Upon information and belief, LAZ Parking operates parking facilities located in Austin, Texas at 510 Guadalupe Street, 108 W. Gibson, 305 S. Congress Ave, 400 Congress Avenue, 400 E 8th Street, 415 E 7th Street, and 99 Trinity Street in Austin, Texas.

58.    Below are true and correct screen captures from LAZ Parking's website for parking facilities operated by LAZ Parking located at 510 Guadalupe Street and 108 W. Gibson in Austin, Texas:



| 510 Guadalupe, Austin, TX | 108 W. Gibson, Austin, TX |
|---|---|
| https://go.lazparking.com/buynow?l=750&start=2025-04-08T22%3A46%3A23.310Z&end=2025-04-09T00%3A46%3A23.310Z | https://go.lazparking.com/buynow?l=138983&start=2025-06-06T16%3A30%3A30.938Z&end=2025-06-06T18%3A30%3A30.938Z |

59.    Upon information and belief, parking facilities where LAZ Parking has contracted for the infringing use of PRRS's automated parking monitoring and management systems/services include but are not limited to those located at 510 Guadalupe Street, 108 W.

Gibson, 305 S. Congress Ave, 400 Congress Avenue, 400 E 8th Street, 415 E 7th Street, and 99 Trinity Street in Austin, Texas.

60.     Exhibit 6 is a true and correct copy of a screen capture of a reddit.com post regarding "Parking Notice" from "Parking Revenue Recovery Services, Inc," for a parking facility identified as located at 510 Guadalupe Street, Austin, Texas, on 4/27/2024.

61.     Upon information and belief, LAZ Parking Texas LLC also owns 510 Guadalupe Street, Austin, Texas. Exhibit 9.

62.     Exhibit 9 is a true and correct copy of a property search record for 510 Guadalupe Street, Austin, Texas, from the website record of the Travis Central Appraisal District of Travis County, Texas, available at https://travis.prodigycad.com/property-detail/848897/2025.

63.     LAZ Parking's website states that Alpha Park, which on information and belief was acquired by LAZ Parking in 2017, "contracts with PRRS to collect outstanding violation debts that are not paid in a timely fashion". https://www.lazparking.com/our-company/about/alpha-park/violation-notices.

64.     Upon information and belief, by knowingly contracting for and/or using PRRS's automated parking monitoring and management systems/services at parking facilities owned, operated, managed, and/or controlled by LAZ Parking in the State of Texas and this District, LAZ Parking has committed acts of infringement in the State of Texas and in this District, directly or indirectly, as explained above and further herein below.

65.     The patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities. As explained above and further in the specific allegations below, on information and belief a substantial part of the events giving rise to MPS's claims against LAZ Parking have occurred in the State of Texas and this District.

66.    LAZ Parking has established sufficient minimum contacts with the State of Texas and this District such that LAZ Parking should reasonably and fairly anticipate being brought into court in the State of Texas and this District without offending traditional notions of fair play and substantial justice.

67.    Venue is proper in this District as to LAZ Parking under 28 U.S.C. §§ 1391(b) and 1400(b).

68.    Venue is proper as to LAZ Parking because, on information and belief, LAZ Parking has committed acts of infringement in this District, and LAZ Parking also has a regular and established place of business in this district.

69.    Upon information and belief, as explained above and also as alleged further below and in attached Exhibits 11 through 15, LAZ Parking has committed and continues to commit acts of infringement in this District, including by using and/or inducing others to use infringing automated parking monitoring and management systems/services, including PRRS's "ARC" systems/services, at parking facilities located in this District, including at facilities located in Austin, Texas at 510 Guadalupe Street, 108 W. Gibson, 305 S. Congress Avenue, 400 Congress Avenue, 400 E 8th Street, 415 E 7th Street, and 99 Trinity Street.

70.    Upon information and belief, and as explained above in paragraphs 47 through 68, LAZ Parking also has regular and established places of business in this District. Further, upon information and belief and also as explained in paragraphs 44 through 69 above, LAZ Parking's business at its established locations in this District relate to the infringing use of PRRS' automated parking monitoring and management system/services.

## **JOINDER**

71.    MPS seeks the relief requested herein, including an injunction and appropriate

14

damages, against PRRS itself based on PRRS's activities related to PRRS's provision of infringing automated parking management and monitoring systems/services activities to its customers, including but not limited to provision of such systems/services to PRRS customer LAZ Parking.

72.     As to the activities of LAZ Parking specifically, MPS seeks the relief requested herein against each of PRRS and LAZ Parking jointly, severally, or in the alternative, arising out of the same infringing use of the same PRRS system/services at LAZ Parking locations.

73.     Joinder of PRRS customer LAZ Parking to this action is proper under at least Federal Rule of Civil Procedure 20 and 35 U.S.C. § 299, at least because the infringing conduct of each Defendant that is alleged by this Complaint arises out of the same transaction, occurrence, or series of transactions or occurrences, relating to using the same system(s)/service(s) to perform the same accused method, and questions of fact common to all Defendants will arise in this action.

74.     For example, upon information and belief, PRRS makes, uses, offers for sale, and/or sells automated parking monitoring and management systems/services for or to its customers including joined defendants LAZ Parking, and in doing so infringes claims of the Patents-in-Suit.

75.     Also, upon information and belief, LAZ Parking uses and/or induces others to use automated parking monitoring and management systems/services purchased and/or licensed from PRRS, and in doing so infringes, directly and/or indirectly, claims of the Patents-in-Suit. Upon information and belief, because PRRS's automated parking monitoring and management systems/services have been used and are in use at LAZ Parking facilities, and there are sales, licensing and/or technology agreements between LAZ Parking and PRRS.

76.     At least in view of the facts alleged in paragraphs 71 through 75 above and because infringement allegations as to each Defendant concern use of the same automated parking monitoring and management systems/services provided by PRRS, questions of fact common to all Defendants will arise in this action.

## BACKGROUND AND PATENTS-IN-SUIT

77.     Since its inception, Plaintiff MPS has become a pioneering force in the smart parking industry. As MPS has grown, it has expanded operations across the United States including in Austin, Texas.

78.     MPS provides municipalities and the public with smart parking technology to help keep cities and campuses safer:



https://municipalparkingservices.com/.

79.     MPS has successfully designed, developed and patented innovative technology that provides its customers with automated, cost-effective parking lot monitoring and management solutions.

80.     More specifically, MPS's patented technology includes automated processes and systems that capture the identity information of vehicles entering and exiting parking lots, calculate associated fees, and issue parking violation notices where appropriate.

81.     MPS's solutions allow automated maintenance of parking lots via sophisticated

camera usage and cloud-based servers. An example is below:





82.     Customers of MPS's patented automated parking solutions include public municipalities and private parking facility operators.

83.     MPS has invested substantial resources to develop and patent its automated parking technology. As a result, MPS has been awarded various patents protecting its innovations, including the Patents-in-Suit.

84.     The Patents-in-Suit relate to, among other things, novel methods to monitor parking facilities and enforce violations.

85.     MPS is the owner of the entire right, title, and interest in and to U.S. Patent No. 10,121,172 ("the '172 patent"), which duly and legally issued on November 6, 2018. The '172 patent is entitled "Parking Lot Monitoring System." A copy of the '172 patent is attached as Exhibit 1.

86.     MPS is the owner of the entire right, title, and interest in and to U.S. Patent No.

11,257,302 ("the '302 patent"), which duly and legally issued on February 22, 2022. The '302 patent is entitled "Parking Meter System." A copy of the '302 patent is attached as Exhibit 2.

87.     MPS is the owner of the entire right, title, and interest in and to U.S. Patent No. 11,688,205 ("the '205 patent"), which duly and legally issued on June 27, 2023. The '205 patent is entitled "Parking Meter System." A copy of the '205 patent is attached as Exhibit 3.

88.     MPS is the owner of the entire right, title, and interest in and to U.S. Patent No. 12,142,085 ("the '085 patent"), which duly and legally issued on November 12, 2024. The '085 patent is entitled "Parking Meter System." A copy of the '085 patent is attached as Exhibit 4.

89.     MPS is the owner of the entire right, title, and interest in and to U.S. Patent No. 12,249,187 ("the '187 patent"), which duly and legally issued on March 11, 2025. The '187 patent is entitled "Parking Meter System." A copy of the '187 patent is attached as Exhibit 5.

90.     The claims of the Patents-in-Suit carry a presumption of validity under 35 U.S.C. § 282(a) and are enforceable.

## OVERVIEW OF DEFENDANTS' INFINGEMENT

91.     Upon information and belief PRRS (and/or alternatively PRRS's customers) has directly infringed claims of the Patents-in-Suit, literally or via the doctrine of equivalents, by performing methods of parking monitoring and managing that are protected by the Patents-in-Suit at various parking facilities throughout the United States including in this District.

92.     For example, on information and belief PRRS provides an "Automated Recognition and Compliance System" ("ARC" system) to automatically capture image data of a vehicle entering and exiting a parking facility, identify and record the time of a vehicle entering and exiting, determine that a parking violation has occurred, and issue a parking violation notice.

93.     ARC" stands for "Automated Recognition and Compliance System, ARC for

short."  https://prrsparking.com/complianceprograms.html.

94.    Upon information and belief, such ARC system/services infringes MPS's

inventions as defined by one or more claims of the Patents-in-Suit, as alleged herein, including

as alleged in the attached Exhibits 11 through 15 which are incorporated herein by reference.

95.    PRRS also refers to its ARC systems/services as "compliance programs" for

parking facilities, and PRRS explains that such programs "enable[] 24-hour real time monitoring

of facilities using free flow traffic methods." https://prrsparking.com/complianceprograms.html.

96.    PRRS's website explains that its ARC system/services provides "parking lot

monitoring" via "fixed LPR [license plate recognition]" as well as "[violation] notice and data

management":

PRRS ensures superior performance from existing assets owned and operated by an operator by monitoring the usage of an asset or area to ensure compliance with the operator's terms of service, operating rules, access authorizations and fee schedules.

**THE 5 FOUNDATIONS
OF OUR COMPLIANCE PROGRAM**



https://prrsparking.com/services.html.

97.    Upon information and belief PRRS has provided and continues to provide its

automated parking monitoring and management systems/services to parking facility operators,

including, without limitation, LAZ Parking, under the "ARC" name.

98.    For example, PRRS's website explains that it provides "monitoring" of parking

lots using its "automated ARC System" to "identify exceptions to [lot operators'] rules and terms

of service" and "ensure that exceptions are identified and documented efficiently."

19

https://prrsparking.com/services.html#serviceDetails.

99.     PRRS's ARC system/services provide "notice and data management," via "software [that] automates the enforcement and management process in one holistic solution to streamline notice issuance and processing."

https://prrsparking.com/services.html#serviceDetails.

100.    Use of PRRS's ARC system/services includes "register[ing]" a vehicle "upon entry and exit using ALPR," "record[ing]" the "parking event…in the database," checking for "[p]ayment confirmation," and "retriev[ing] vehicle owner data and issu[ing] notices for operating rules exceptions":



https://prrsparking.com/complianceprograms.html#complianceDetails.

101.    Upon information and belief, the "ALPR" referenced on PRRS's website refers to "Automated License Plate Recognition."

102.    On information and belief, PRRS' ALPR uses cameras to capture images of vehicle license plates as they enter and exit a parking facility and then employs optical character recognition ("OCR") technology to convert the images into text, which the system then compares

against databases of license plate registrations and is used by the system to issue a parking

violation notice, for example if a certain time period had expired without payment.

103.    Upon information and belief, PRRS posted a promotional video regarding its

"ARC" system on YouTube, at the following url: https://www.youtube.com/watch?v=SOOz-6riR2c

104.    Below is a true and correct copy of a screenshot from the video at the url

https://www.youtube.com/watch?v=SOOz-6riR2c, at the 1:55 mark:



105.    Upon information and belief, PRRS's ARC system/services automatically issues

parking violation notices in the event the system detects that a vehicle that entered and exited the

parking facility did not pay for parking within a certain grace period.

106.    Upon information and belief, PRRS posted a video at the following url that also

explains its "ARC" system: https://www.facebook.com/Parkingprrs/videos/768476596907647.

107.    The video posted at

https://www.facebook.com/Parkingprrs/videos/768476596907647 states:

> "The license plate recognition camera, grabs the license plate
> image of the customer captures the time that they entered the lot. It
> gives them a 10 minute grace period to walk to the pay station and
> pay the pay station. If they don't pay and they don't meet that 10

minute grace period and they remain on the lot when they exit the
lot. It'll capture their exit time and then that information will be
sent to our screamer program, PRRS's enforcement system, and
it'll send a letter to that person within one to two business days of a
violation that they were either over time or they didn't pay the
parking fee for the day."

108.    Upon information and belief, the individual shown and featured in the video

posted at https://www.facebook.com/Parkingprrs/videos/768476596907647 is PRRS's CEO John

Conway.

109.    Upon information and belief, PRRS also provides customers and potential

customers with documents describing PRRS's "ARC" "Parking Compliance" system/services.

110.    Exhibit 10 is a true and correct copy of a PRRS document provided to PRRS

customers or potential customers describing PRRS's ARC system/services.

111.    PRRS describes its "ARC Frictionless Compliance" system on its website,

including at the url https://prrsparking.com/complianceprograms.html#complianceDetails.

112.    PRRS's website provides the following depiction of its "ARC Frictionless

Compliance" system:



FRICTIONLESS COMPLIANCE

PRRS takes parking facility monitoring to the next level with its 24/7 automatic, gate- and barrierless solution. Lot monitoring is automatized by installing cameras at the access points of the parking lot to capture each entry and exit event. Payment information of the parking events are retrieved from onsite payment terminals, contract management software, reservation platforms, and other digital payment solutions to confirm authorization and payment to the facility.

**FEATURES:**

- Vehicles are identified at entry and exit using ALPR.
- Payment is confirmed based on license plate by querying appropriate payment solutions.
- Operating exceptions are identified and include appropriate event details which are provided to the parking operator.
- Parking Sessions and occupancy are monitored real time



https://prrsparking.com/complianceprograms.html#complianceDetails.

113.    Upon information and belief, PRRS provides its ARC system/services with various packages.

114.    PRRS's website depicts several "ARC" packages.



https://prrsparking.com/complianceprograms.html.

115.    One example of infringing automated parking monitoring and management systems/services PRRS provides to its customers is, on information and belief, called "ARC360."

116.    On information and belief, PRRS's "ARC360" includes use of PRRS's "Frictionless Compliance" system.

117.    Another example of infringing automated parking monitoring and management systems/services PRRS provides to its customers is, on information and belief, called "ARC135."

118.    On information and belief, PRRS's "ARC135" includes use of PRRS's "Frictionless Compliance" system.

https://prrsparking.com/complianceprograms.html#complianceDetails ("PRRS provides its state-of-the-art frictionless technology…").

119.    On information and belief, PRRS's ARC system/services, including but not limited to use of the ARC "Frictionless Compliance" system, and including but not limited to ARC360 and ARC135, results in PRRS performing all of the claimed steps and therefore directly infringing claims of the Patents-in-Suit the United States, the State of Texas, and this District, as

alleged above and further below and also as shown in the attached Exhibits 11 through 15, which are incorporated as if fully set forth herein.

120.    On information and belief, LAZ Parking has contracted for PRRS's automated parking monitoring and management systems/services at parking lots operated by LAZ Parking, including at lots in Austin, Texas as alleged above, and on information and belief such systems/services include use of PRRS's "ARC" system/services, including the "Frictionless Compliance" system.

121.    On information and belief, the PRRS "ARC" systems/services used at LAZ Parking-operated parking lots, including LAZ Parking-operated parking lots in Austin, Texas, infringes claims of the Patents-in-Suit the United States, the State of Texas, and this District, as alleged herein and in the attached Exhibits 11 through 15.

122.    By contracting with PRRS for the infringing "ARC" systems/services at LAZ Parking operated parking lots, upon information and belief LAZ Parking has induced infringement of the Patents-in-Suit the United States, the State of Texas, and this District, as alleged above and further below.

123.    In the alternative, to the extent some automated parking monitoring and management systems/services provided by PRRS require that the claimed steps are performed by a combination of PRRS and its customer, on information and belief and as also alleged below the performance of one or more of the claimed steps by a PRRS' customer is attributable to PRRS, or alternatively the performance of one or more infringing steps by PRRS is attributable to PRRS's customer under the theory of joint infringement as also alleged further below, at least by virtue of the contract between PRRS and its customer. In this instance, the combination of PRRS and its customer perform all of the claimed steps of the asserted claims of the Patents-in-Suit, as

alleged herein and as shown in each of Exhibits 11 through 15, which are incorporated here by reference.

124.     In the alternative, PRRS has been and is indirectly infringing the Patents-in-Suit by actively inducing and/or contributing to the direct infringement by others of the Patents-in-Suit in the United States, the State of Texas, and this District, PRRS and is liable for infringement under 35 U.S.C. §§ 271(b) and/or (c).

## DEFENDANTS' KNOWLEDGE OF THE PATENTS-IN-SUIT

125.     Upon information and belief, Defendants knew about the Patents-in-Suit prior to the filing of this Complaint or were willfully blind to them.

126.     MPS has complied with the marking and notice requirements of 35 U.S.C. § 287.

127.     Each of the Patents-in-Suit is part of the same patent family.

### (i) LAZ Parking's Knowledge

128.     MPS incorporates paragraphs 125 through 127 above as if fully set forth herein.

129.     MPS put LAZ Parking on notice of at least the '172 Patent during a spring 2022 meeting between MPS and LAZ Parking.

130.     LAZ Parking is a customer of one of MPS's competitors, PRRS.

131.     MPS has previously enforced the '172, '205, and '302 patents of the Patents-in-Suit against one of its other competitors in the U.S. District Court for the District of Colorado.

132.     MPS' patented innovations and its enforcement of its patent rights has been reported in industry news, including prior to the filing of this Complaint. *See, e.g.*, https://www.parking.net/parking-news/municipal-parking-services-mps/leads-the-smart-parking-industry-with-patented-innovations.

133.     Upon information and belief, LAZ Parking was aware of MPS's enforcement of

the '172, '205, and '302 patents in the District of Colorado prior to the filing of this Complaint.

134.    In addition, MPS advertises its "ALPR patented technology for gateless lots & garages" and explains that such technology "[i]ncrease[s] parking revenue & improve[s] compliance." https://municipalparkingservices.com/solutions-lots-and-garages. MPS also explains that its "patented technology platform" provides "innovative payment and enforcement solution options." https://municipalparkingservices.com/about-our-story.

135.    Moreover, MPS is, and was prior to the filing of the Complaint, well-known in the parking industry as a vendor of automated parking monitoring and management technology.

136.    Upon information and belief, LAZ Parking gained knowledge of the Patents-in-Suit prior to filing of this Complaint, at least from its meeting with MPS, from MPS' patent enforcement suit in Colorado, and/or its familiarity with MPS as a well-known supplier of patented parking technology in the industry.

137.    At least in view of the above, upon information and belief, LAZ Parking knew about the Patents-in-Suit prior to the filing of this Complaint or was willfully blind to them.

138.    At least as of the filing of this Complaint, LAZ Parking will also have knowledge of the Patents-in-Suit.

### (ii) PRRS's Knowledge

139.    MPS incorporates paragraphs 125 through 138 above as if fully set forth herein.

140.    PRRS is a competitor of MPS.

141.    PRRS is aware of MPS and was aware of MPS prior to the filing of this Complaint.

142.    Upon information and belief, one of PRRS's customers is LAZ Parking.

143.    Upon information and belief, PRRS was aware of MPS's enforcement of the '172,

'205, and '302 patents in the U.S. District Court for the District of Colorado prior to the filing of this Complaint.

144.    Upon information and belief, PRRS gained knowledge of the Patents-in-Suit prior to filing of this Complaint from its customer LAZ Parking, its knowledge of MPS's patent enforcement suit in Colorado, and/or its familiarity with MPS and MPS's patents covering parking monitoring technology as a competitor in the same industry including by the publicization of MPS's patent enforcement activities and patent rights as alleged above.

145.    At least in view of the above, upon information and belief, PRRS knew about the Patents-in-Suit prior to the filing of this Complaint or was willfully blind to them.

146.    At least as of the filing of this Complaint, PRRS will also have knowledge of the Patents-in-Suit.

147.    On information and belief, and as alleged above, Defendants have known of the existence of the Patents-in-Suit and their applicability to PRRS's automated parking monitoring and management systems/services, and Defendants' acts of infringement have been willful and in disregard for the Patents-in-Suit, without any reasonable basis for believing that it had a right to engage in the infringing conduct, at least as of the dates of knowledge of the Patents-in-Suit alleged above, and no later than the filing date of this Complaint.

## COUNT 1
## Infringement of U.S. Patent No. 10,121,172

148.    MPS incorporates the paragraphs above as if fully set forth herein.

149.    MPS is the assignee of all right, title and interest in the '172 Patent, a copy of which is attached as Exhibit 1.

150.    Upon information and belief, PRRS has infringed claims of the Patents-in-Suit, directly or indirectly, by making, using, offering to sell, selling, and/or importing automated

parking monitoring and management systems/services, including PRRS's "ARC" system/services, for and/or at parking facilities of its customers throughout the United States, including parking facilities of customers located in this District.

151.    Upon information and belief, PRRS has directly infringed and continues to directly infringe, under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, claims of the '172 Patent by making, using, offering to sell, selling, and/or importing automated parking monitoring and management systems/services, including but not limited to, using such systems/services at parking facilities located in this District.

152.    Upon information and belief, such infringement includes PRRS's "Automated Recognition and Compliance" ("ARC") system/services. For example, upon information and belief, PRRS deploys its "ARC" system/services at parking facilities of PRRS's customers, and in so doing PRRS performs each step of claim 12 of the '172 Patent and therefore infringes at least that claim. A comparison of claim 12 of the '172 Patent to PRRS's ARC system/services is attached as Exhibit 11, which is incorporated herein by reference.

153.    Upon information and belief, by deploying its "ARC" system/services at parking facilities of its customers PRRS also infringes other claims of the '172 Patent, including claims depending from claim 12.

154.    Upon information and belief, PRRS knew of the '172 patent prior to the filing of the Complaint as alleged above, and in any event no later than the date of filing of this Complaint.

155.    In the alternative, PRRS is liable for direct infringement under the theory of joint infringement. Upon information and belief, the automated parking monitoring and management systems/services provided by PRRS to its customers (including the ARC system/services)

require at least that some combination of PRRS and its customer use such system/services and perform all the steps recited by claims of the '172 patent, including claim 12. Further, upon information and belief, to the extent such system/services provided by PRRS involves PRRS's customer performing some of the claimed steps and PRRS itself performing others, all of the claimed steps are nevertheless attributable to PRRS under the theory of joint infringement due to a contractual relationship between PRRS and its customer where PRRS directs its customer to perform the claimed steps that PRRS itself does not perform.

156.    Upon information and belief, PRRS also provides its customers with detailed instructions regarding how to perform the claimed steps, and resources for helping them to do so.

157.    In addition, upon information and belief PRRS contracts with its customers to condition receipt of the benefit of its automated parking monitoring and management systems/services on those customers' performance of any steps of using such systems/services that PRRS itself does not perform, according to terms prescribed by PRRS as part of its contract with the customer.

158.    Upon information and belief PRRS also maintains control over the use by its customers of the systems providing the parking monitoring, including the ARC system/services. For example, the "Facility Monitoring and Compliance Agreement Terms and Conditions" posted on PRRS' website at https://prrsparking.com/legal.html, states PRRS's customers' "use of the ARC Software will be solely in accordance with the documentation [provided by PRRS], this Agreement, and such reasonable instructions as PRRS may provide from time to time." Exhibit 16, p.1.

159.    Exhibit 16 is a true and correct copy of the "Facility Monitoring and Compliance Agreement Terms and Conditions" that is posted on PRRS's website at https://prrsparking.com/legal.html.

160.    In the alternative, PRRS has been and is indirectly infringing the '172 Patent by actively inducing and/or contributing to the direct infringement by PRRS's customers of the '172 Patent in the United States, the State of Texas, and this District.

161.    Upon information and belief, PRRS knew of the '172 patent prior to the filing of the Complaint as alleged above, and in any event no later than the date of filing of this Complaint.

162.    Upon information and belief and as alleged above, PRRS's automated parking monitoring and management systems/services, including PRRS's "ARC" system/services, that are and/or have been in use at parking lots operated by PRRS customers, infringe claims of the '172 patent, including claim 12. A comparison of claim 12 of the '172 Patent to PRRS's ARC system/services is attached as Exhibit 11, which is incorporated herein by reference.

163.    In the alternative, upon information and belief, PRRS has been and is now has been and is now in violation of 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of claims of the '172 Patent, including claim 12. Upon information and belief, PRRS specifically intended and was aware that the ordinary and customary use of its automated parking monitoring and management systems/services, including the ARC system/services, by its customers would infringe the '172 Patent.

164.    Upon information and belief, PRRS took active steps to encourage its customers to use and operate PRRS's automated parking monitoring and management systems/services at parking facilities of PRRS customers, despite knowing of the '172 Patent, in a manner PRRS

knew to directly infringe claims of the '172 Patent, including claim 12. Further, upon information and belief PRRS provides product and/or service manuals and other technical information that cause its customers and/or other third parties to use and to operate the ARC system, for its ordinary and customary use, such that PRRS's customers and/or other third parties have directly infringed the '172 Patent, through the normal and customary use of PRRS's ARC system/services. For example, see Exhibit 16, p.1 ("Facility Monitoring and Compliance Agreement Terms and Conditions" posted on PRRS' website, stating that PRRS provides "ARC Software modules and related documentation" to its customers). Upon information and belief, such software and/or documentation instructs PRRS's customers to perform method(s) that infringe at least claim 12 of the '172 patent.

165.     Upon information and belief, PRRS's encouragement of its customers to use the ARC system/services according to its ordinary and customary usage resulted in PRRS's customers directly infringing claims of the '172 patent, including claim 12.

166.     In the alternative, PRRS also has been and is now in violation of 35 U.S.C. § 271(c) by contributing to infringement of claims of the '172 Patent, including claim 12, literally and/or under the doctrine of equivalents, by, among other things, selling, offering for sale, and/or importing within this District and elsewhere in the United States, automated parking monitoring and management systems/services, including ARC system/services, with knowledge of the '172 Patent and knowing that such automated parking monitoring and management systems/services are especially made or especially adapted for use in the infringement of the '172 Patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

167.    Upon information and belief, by using its "ARC" system/services, PRRS also infringes, directly or indirectly, claims of the '172 patent other than claim 12, including claims depending from claim 12.

168.    Upon information and belief, LAZ Parking has been and is infringing the '172 Patent, including by knowingly, actively, and intentionally inducing the direct infringement by others of the '172 Patent in the United States, the State of Texas, and this District.

169.    Upon information and belief LAZ Parking has contracted with PRRS to deploy PRRS's automated parking monitoring and management systems/services, including PRRS's "ARC" system/services, at parking facilities operated by LAZ Parking located at 510 Guadalupe Street, 108 W. Gibson, 305 S. Congress Avenue, 400 Congress Avenue, 400 E 8th Street, 415 E 7th Street, and 99 Trinity Street in Austin, Texas as well as at additional locations within the United States.

170.    As alleged above, PRRS's automated parking monitoring and management systems/services, including PRRS's "ARC" system/services, that are and have been in use at parking lots operated by LAZ Parking, infringe claims of the '172 patent, including claim 12.  A comparison of claim 12 of the '172 Patent to PRRS's ARC system/services is attached as Exhibit 11, which is incorporated herein by reference.

171.    Upon information and belief, LAZ Parking knew of the '172 patent prior to the filing of the Complaint as alleged above, and in any event no later than the date of filing of this Complaint.

172.    Upon information and belief, LAZ Parking specifically intended and was aware that the ordinary and customary use PRRS's "ARC" system/services at LAZ Parking-operated facilities would infringe the '172 Patent, including claim 12.

173.     Upon information and belief, LAZ Parking additionally took active steps to encourage PRRS to use and operate PRRS's ARC system/services at LAZ Parking's facilities, despite knowing of the '172 Patent, in a manner LAZ Parking knew to directly infringe claims of the '172 Patent, including claim 12.

174.     Upon information and belief LAZ Parking knew that the normal and customary use by PRRS of PRRS's ARC system/services at LAZ Parking-operated lots directly infringed the '172 Patent.

175.     Upon information and belief, LAZ Parking has induced and continues to induce infringement of claims of the '172 patent other than claim 12, including claims depending from claim 12.

176.     In the alternative, LAZ Parking is liable for direct infringement, including under the theory of joint infringement.

177.     Upon information and belief, automated parking monitoring and management systems/services provided by PRRS to LAZ Parking, including the ARC system/services, require at least that some combination of PRRS, LAZ Parking, and/or others in contract with LAZ Parking use such systems/services and perform all the steps recited by claims of the '172 Patent, including claim 12. Further, upon information and belief, to the extent use of such systems/services involves PRRS itself or another LAZ Parking contractee performing one or more of the claimed steps, all of the claimed steps are nevertheless attributable to LAZ Parking under the theory of joint infringement due to a contractual relationship between LAZ Parking and its contractee(s) that directs the contractee (e.g., PRRS) to perform, and also provides instructions regarding how to perform, the claimed steps that LAZ Parking itself does not perform.

34

178.    In addition, upon information and belief the contract LAZ Parking entered into with PRRS conditions payment for PRRS's automated parking monitoring and management systems/services on PRRS's performance of any steps of the contracted-for ARC system/services that LAZ Parking itself does not perform.

179.    Defendants' infringement of the '172 patent is ongoing.

180.    Defendants' infringement of the '172 patent has been and continues to be willful, at least as of the date of each Defendant's knowledge of the '172 patent as alleged above. Defendants have profited from and will continue to profit from their infringing activities. MPS has been and will continue to be damaged by Defendants' infringing activities. As a result, MPS is entitled to injunctive relief and damages adequate to compensate it for such infringement, in accordance with 35 U.S.C. §§ 271, 281, 283, and 284. The harm to MPS from Defendants' ongoing infringing activity is irreparable, is continuing, is not fully compensable by money damages, and will continue unless Defendants' infringing activities are enjoined.

## COUNT 2
## Infringement of U.S. Patent No. 11,257,302

181.    MPS incorporates the paragraphs above as if fully set forth herein.

182.    MPS is the assignee of all right, title and interest in the '302 Patent, a copy of which is attached as Exhibit 2.

183.    Upon information and belief, PRRS has infringed claims of the Patents-in-Suit, directly or indirectly, by making, using, offering to sell, selling, and/or importing automated parking monitoring and management systems/services, including PRRS's "ARC" system/services, for and/or at parking facilities of its customers throughout the United States, including parking facilities of customers located in this District.

184.    Upon information and belief, PRRS has directly infringed and continues to

directly infringe, under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, claims of the '302 Patent by making, using, offering to sell, selling, and/or importing automated parking monitoring and management systems/services, including but not limited to, using such systems/services at parking facilities located in this District.

185.    Upon information and belief, such infringement includes PRRS's "Automated Recognition and Compliance" ("ARC") system/services. For example, upon information and belief, PRRS deploys its "ARC" system/services at parking facilities of its customers, and in so doing PRRS performs each step of claim 1 of the '302 Patent and therefore infringes at least that claim. A comparison of claim 1 of the '302 Patent to PRRS's ARC system/services is attached as Exhibit 12, which is incorporated herein by reference.

186.    Upon information and belief, by deploying its "ARC" system/services at parking facilities of its customers PRRS also infringes other claims of the '302 Patent, including claims depending from claim 1.

187.    Upon information and belief, PRRS knew of the '302 patent prior to the filing of the Complaint as alleged above, and in any event no later than the date of filing of this Complaint.

188.    In the alternative, PRRS is liable for direct infringement under the theory of joint infringement. Upon information and belief, the automated parking monitoring and management systems/services provided by PRRS to its customers (including the ARC system/services) require at least that some combination of PRRS and its customer use such system/services and perform all the steps recited by claims of the '302 patent, including claim 1. Further, upon information and belief, to the extent such system/services provided by PRRS involves PRRS's customer performing some of the claimed steps and PRRS itself performing others, all of the

claimed steps are nevertheless attributable to PRRS under the theory of joint infringement due to a contractual relationship between PRRS and its customer where PRRS directs its customer to perform the claimed steps that PRRS itself does not perform.

189.    Upon information and belief, PRRS also provides its customers with detailed instructions regarding how to perform the claimed steps, and resources for helping them to do so.

190.    In addition, upon information and belief PRRS contracts with its customers to condition receipt of the benefit of its automated parking monitoring and management systems/services on those customers' performance of any steps of using such systems/services that PRRS itself does not perform, according to terms prescribed by PRRS as part of its contract with the customer.

191.    Upon information and belief PRRS also maintains control over the use by its customers of the systems providing the parking monitoring, including the ARC system/services. For example, the "Facility Monitoring and Compliance Agreement Terms and Conditions" posted on PRRS' website at https://prrsparking.com/legal.html, states PRRS's customers' "use of the ARC Software will be solely in accordance with the documentation [provided by PRRS], this Agreement, and such reasonable instructions as PRRS may provide from time to time." Exhibit 16, p.1.

192.    Exhibit 16 is a true and correct copy of the "Facility Monitoring and Compliance Agreement Terms and Conditions" that is posted on PRRS's website at https://prrsparking.com/legal.html.

193.    In the alternative, PRRS has been and is indirectly infringing the '302 Patent by actively inducing and/or contributing to the direct infringement by PRRS's customers of the '302 Patent in the United States, the State of Texas, and this District.

194.    Upon information and belief, PRRS knew of the '302 patent prior to the filing of the Complaint as alleged above, and in any event no later than the date of filing of this Complaint.

195.    Upon information and belief and as alleged above, PRRS's automated parking monitoring and management systems/services, including PRRS's "ARC" system/services, that are and/or have been in use at parking lots operated by PRRS customers, infringe claims of the '302 patent, including claim 1.  A comparison of claim 1 of the '302 Patent to PRRS's ARC system/services is attached as Exhibit 12, which is incorporated herein by reference.

196.    In the alternative, upon information and belief, PRRS has been and is now has been and is now in violation of 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of claims of the '302 Patent, including claim 1. Upon information and belief, PRRS specifically intended and was aware that the ordinary and customary use of its automated parking monitoring and management systems/services, including the ARC system/services, by its customers would infringe the '302 Patent.

197.    Upon information and belief, PRRS took active steps to encourage its customers to use and operate PRRS's automated parking monitoring and management systems/services at parking facilities of PRRS customers, despite knowing of the '302 Patent, in a manner PRRS knew to directly infringe claims of the '302 Patent, including claim 1. Further, upon information and belief PRRS provides product and/or service manuals and other technical information that cause its customers and/or other third parties to use and to operate the ARC system, for its ordinary and customary use, such that PRRS's customers and/or other third parties have directly infringed the '302 Patent, through the normal and customary use of PRRS's ARC system/services. For example, see Exhibit 16, p.1 ("Facility Monitoring and Compliance

Agreement Terms and Conditions" posted on PRRS' website, stating that PRRS provides "ARC Software modules and related documentation" to its customers). Upon information and belief, such software and/or documentation instructs PRRS's customers to perform method(s) that infringe at least claim 1 of the '302 patent.

198.    Upon information and belief, PRRS's encouragement of its customers to use the ARC system/services according to its ordinary and customary usage resulted in PRRS's customers directly infringing claims of the '302 patent, including claim 1.

199.    In the alternative, PRRS also has been and is now in violation of 35 U.S.C. § 271(c) by contributing to infringement of claims of the '302 Patent, including claim 1, literally and/or under the doctrine of equivalents, by, among other things, selling, offering for sale, and/or importing within this District and elsewhere in the United States, automated parking monitoring and management systems/services, including ARC system/services, with knowledge of the '302 Patent and knowing that such automated parking monitoring and management systems/services are especially made or especially adapted for use in the infringement of the '302 Patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

200.    Upon information and belief, by using its "ARC" system/services, PRRS also infringes, directly or indirectly, claims of the '302 patent other than claim 1, including claims depending from claim 1.

201.    Upon information and belief, LAZ Parking has been and is infringing the '302 Patent, including by knowingly, actively, and intentionally inducing the direct infringement by others of the '302 Patent in the United States, the State of Texas, and this District.

202.    Upon information and belief LAZ Parking has contracted with PRRS to deploy PRRS's automated parking monitoring and management systems/services, including PRRS's

"ARC" system/services, at parking facilities operated by LAZ Parking located at 510 Guadalupe Street, 108 W. Gibson, 305 S. Congress Avenue, 400 Congress Avenue, 400 E 8th Street, 415 E 7th Street, and 99 Trinity Street in Austin, Texas as well as at additional locations within the United States.

203.    As alleged above, PRRS's automated parking monitoring and management systems/services, including PRRS's "ARC" system/services, that are and have been in use at parking lots operated by LAZ Parking, infringe claims of the '302 patent, including claim 1.  A comparison of claim 1 of the '302 Patent to PRRS's ARC system/services is attached as Exhibit 12, which is incorporated herein by reference.

204.    Upon information and belief, LAZ Parking knew of the '302 patent prior to the filing of the Complaint as alleged above, and in any event no later than the date of filing of this Complaint.

205.    Upon information and belief, LAZ Parking specifically intended and was aware that the ordinary and customary use PRRS's "ARC" system/services at LAZ Parking-operated facilities would infringe the '302 Patent, including claim 1.

206.    Upon information and belief, LAZ Parking additionally took active steps to encourage PRRS to use and operate PRRS's ARC system/services at LAZ Parking's facilities, despite knowing of the '302 Patent, in a manner LAZ Parking knew to directly infringe claims of the '302 Patent, including claim 1.

207.    Upon information and belief LAZ Parking knew that the normal and customary use by PRRS of PRRS's ARC system/services at LAZ Parking-operated lots directly infringed the '302 Patent.

208.    Upon information and belief, LAZ Parking has induced and continues to induce

infringement of claims of the '302 patent other than claim 1, including claims depending from claim 1.

209.    In the alternative, LAZ Parking is liable for direct infringement, including under the theory of joint infringement.

210.    Upon information and belief, automated parking monitoring and management systems/services provided by PRRS to LAZ Parking, including the ARC system/services, require at least that some combination of PRRS, LAZ Parking, and/or others in contract with LAZ Parking use such systems/services and perform all the steps recited by claims of the '302 Patent, including claim 1. Further, upon information and belief, to the extent use of such systems/services involves PRRS itself or another LAZ Parking contractee performing one or more of the claimed steps, all of the claimed steps are nevertheless attributable to LAZ Parking under the theory of joint infringement due to a contractual relationship between LAZ Parking and its contractee(s) that directs the contractee (e.g., PRRS) to perform, and also provides instructions regarding how to perform, the claimed steps that LAZ Parking itself does not perform.

211.    In addition, upon information and belief the contract LAZ Parking entered into with PRRS conditions payment for PRRS's automated parking monitoring and management systems/services on PRRS's performance of any steps of the contracted-for ARC system/services that LAZ Parking itself does not perform.

212.    Defendants' infringement of the '302 patent is ongoing.

213.    Defendants' infringement of the '302 patent has been and continues to be willful, at least as of the date of each Defendant's knowledge of the '302 patent as alleged above. Defendants have profited from and will continue to profit from their infringing activities. MPS

has been and will continue to be damaged by Defendants' infringing activities. As a result, MPS is entitled to injunctive relief and damages adequate to compensate it for such infringement, in accordance with 35 U.S.C. §§ 271, 281, 283, and 284. The harm to MPS from Defendants' ongoing infringing activity is irreparable, is continuing, is not fully compensable by money damages, and will continue unless Defendants' infringing activities are enjoined.

**COUNT 3**
**Infringement of U.S. Patent No. 11,688,205**

214.    MPS incorporates the paragraphs above as if fully set forth herein.

215.    MPS is the assignee of all right, title and interest in the '205 Patent, a copy of which is attached as Exhibit 3.

216.    Upon information and belief, PRRS has infringed claims of the Patents-in-Suit, directly or indirectly, by making, using, offering to sell, selling, and/or importing automated parking monitoring and management systems/services, including PRRS's "ARC" system/services, for and/or at parking facilities of its customers throughout the United States, including parking facilities of customers located in this District.

217.    Upon information and belief, PRRS has directly infringed and continues to directly infringe, under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, claims of the '205 Patent by making, using, offering to sell, selling, and/or importing automated parking monitoring and management systems/services, including but not limited to, using such systems/services at parking facilities located in this District.

218.    Upon information and belief, such infringement includes PRRS's "Automated Recognition and Compliance" ("ARC") system/services. For example, upon information and belief, PRRS deploys its "ARC" system/services at parking facilities of its customers, and in so doing PRRS performs each step of claim 16 of the '205 Patent and therefore infringes at least

42

that claim. A comparison of claim 16 of the '205 Patent to PRRS's ARC system/services is attached as Exhibit 13, which is incorporated herein by reference.

219.    Upon information and belief, by deploying its "ARC" system/services at parking facilities of its customers PRRS also infringes other claims of the '205 Patent, including claims depending from claim 16.

220.    Upon information and belief, PRRS knew of the '205 patent prior to the filing of the Complaint as alleged above, and in any event no later than the date of filing of this Complaint.

221.    In the alternative, PRRS is liable for direct infringement under the theory of joint infringement. Upon information and belief, the automated parking monitoring and management systems/services provided by PRRS to its customers (including the ARC system/services) require at least that some combination of PRRS and its customer use such system/services and perform all the steps recited by claims of the '205 patent, including claim 16. Further, upon information and belief, to the extent such system/services provided by PRRS involves PRRS's customer performing some of the claimed steps and PRRS itself performing others, all of the claimed steps are nevertheless attributable to PRRS under the theory of joint infringement due to a contractual relationship between PRRS and its customer where PRRS directs its customer to perform the claimed steps that PRRS itself does not perform.

222.    Upon information and belief, PRRS also provides its customers with detailed instructions regarding how to perform the claimed steps, and resources for helping them to do so.

223.    In addition, upon information and belief PRRS contracts with its customers to condition receipt of the benefit of its automated parking monitoring and management systems/services on those customers' performance of any steps of using such systems/services

that PRRS itself does not perform, according to terms prescribed by PRRS as part of its contract with the customer.

224.    Upon information and belief PRRS also maintains control over the use by its customers of the systems providing the parking monitoring, including the ARC system/services. For example, the "Facility Monitoring and Compliance Agreement Terms and Conditions" posted on PRRS' website at https://prrsparking.com/legal.html, states PRRS's customers' "use of the ARC Software will be solely in accordance with the documentation [provided by PRRS], this Agreement, and such reasonable instructions as PRRS may provide from time to time." Exhibit 16, p.1.

225.    Exhibit 16 is a true and correct copy of the "Facility Monitoring and Compliance Agreement Terms and Conditions" that is posted on PRRS's website at https://prrsparking.com/legal.html.

226.    In the alternative, PRRS has been and is indirectly infringing the '205 Patent by actively inducing and/or contributing to the direct infringement by PRRS's customers of the '205 Patent in the United States, the State of Texas, and this District.

227.    Upon information and belief, PRRS knew of the '205 patent prior to the filing of the Complaint as alleged above, and in any event no later than the date of filing of this Complaint.

228.    Upon information and belief and as alleged above, PRRS's automated parking monitoring and management systems/services, including PRRS's "ARC" system/services, that are and/or have been in use at parking lots operated by PRRS customers, infringe claims of the '205 patent, including claim 16.  A comparison of claim 16 of the '205 Patent to PRRS's ARC system/services is attached as Exhibit 13, which is incorporated herein by reference.

229.    In the alternative, upon information and belief, PRRS has been and is now has been and is now in violation of 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of claims of the '205 Patent, including claim 16. Upon information and belief, PRRS specifically intended and was aware that the ordinary and customary use of its automated parking monitoring and management systems/services, including the ARC system/services, by its customers would infringe the '205 Patent.

230.    Upon information and belief, PRRS took active steps to encourage its customers to use and operate PRRS's automated parking monitoring and management systems/services at parking facilities of PRRS customers, despite knowing of the '205 Patent, in a manner PRRS knew to directly infringe claims of the '205 Patent, including claim 16. Further, upon information and belief PRRS provides product and/or service manuals and other technical information that cause its customers and/or other third parties to use and to operate the ARC system, for its ordinary and customary use, such that PRRS's customers and/or other third parties have directly infringed the '205 Patent, through the normal and customary use of PRRS's ARC system/services. For example, see Exhibit 16, p.1 ("Facility Monitoring and Compliance Agreement Terms and Conditions" posted on PRRS' website, stating that PRRS provides "ARC Software modules and related documentation" to its customers). Upon information and belief, such software and/or documentation instructs PRRS's customers to perform method(s) that infringe at least claim 16 of the '205 patent.

231.    Upon information and belief, PRRS's encouragement of its customers to use the ARC system/services according to its ordinary and customary usage resulted in PRRS's customers directly infringing claims of the '205 patent, including claim 16.

232.     In the alternative, PRRS also has been and is now in violation of 35 U.S.C. § 271(c) by contributing to infringement of claims of the '205 Patent, including claim 16, literally and/or under the doctrine of equivalents, by, among other things, selling, offering for sale, and/or importing within this District and elsewhere in the United States, automated parking monitoring and management systems/services, including ARC system/services, with knowledge of the '205 Patent and knowing that such automated parking monitoring and management systems/services are especially made or especially adapted for use in the infringement of the '205 Patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

233.     Upon information and belief, by using its "ARC" system/services, PRRS also infringes, directly or indirectly, claims of the '205 patent other than claim 16, including claims depending from claim 16.

234.     Upon information and belief, LAZ Parking has been and is infringing the '205 Patent, including by knowingly, actively, and intentionally inducing the direct infringement by others of the '205 Patent in the United States, the State of Texas, and this District.

235.     Upon information and belief LAZ Parking has contracted with PRRS to deploy PRRS's automated parking monitoring and management systems/services, including PRRS's "ARC" system/services, at parking facilities operated by LAZ Parking located at 510 Guadalupe Street, 108 W. Gibson, 305 S. Congress Avenue, 400 Congress Avenue, 400 E 8th Street, 415 E 7th Street, and 99 Trinity Street in Austin, Texas as well as at additional locations within the United States.

236.     As alleged above, PRRS's automated parking monitoring and management systems/services, including PRRS's "ARC" system/services, that are and have been in use at parking lots operated by LAZ Parking, infringe claims of the '205 patent, including claim 16.  A

comparison of claim 16 of the '205 Patent to PRRS's ARC system/services is attached as Exhibit 13, which is incorporated herein by reference.

237.    Upon information and belief, LAZ Parking knew of the '205 patent prior to the filing of the Complaint as alleged above, and in any event no later than the date of filing of this Complaint.

238.    Upon information and belief, LAZ Parking specifically intended and was aware that the ordinary and customary use PRRS's "ARC" system/services at LAZ Parking-operated facilities would infringe the '205 Patent, including claim 16.

239.    Upon information and belief, LAZ Parking additionally took active steps to encourage PRRS to use and operate PRRS's ARC system/services at LAZ Parking's facilities, despite knowing of the '205 Patent, in a manner LAZ Parking knew to directly infringe claims of the '205 Patent, including claim 16.

240.    Upon information and belief LAZ Parking knew that the normal and customary use by PRRS of PRRS's ARC system/services at LAZ Parking-operated lots directly infringed the '205 Patent.

241.    Upon information and belief, LAZ Parking has induced and continues to induce infringement of claims of the '205 patent other than claim 16, including claims depending from claim 16.

242.    In the alternative, LAZ Parking is liable for direct infringement, including under the theory of joint infringement.

243.    Upon information and belief, automated parking monitoring and management systems/services provided by PRRS to LAZ Parking, including the ARC system/services, require at least that some combination of PRRS, LAZ Parking, and/or others in contract with LAZ

Parking use such systems/services and perform all the steps recited by claims of the '205 Patent, including claim 16. Further, upon information and belief, to the extent use of such systems/services involves PRRS itself or another LAZ Parking contractee performing one or more of the claimed steps, all of the claimed steps are nevertheless attributable to LAZ Parking under the theory of joint infringement due to a contractual relationship between LAZ Parking and its contractee(s) that directs the contractee (e.g., PRRS) to perform, and also provides instructions regarding how to perform, the claimed steps that LAZ Parking itself does not perform.

244.    In addition, upon information and belief the contract LAZ Parking entered into with PRRS conditions payment for PRRS's automated parking monitoring and management systems/services on PRRS's performance of any steps of the contracted-for ARC system/services that LAZ Parking itself does not perform.

245.    Defendants' infringement of the '205 patent is ongoing.

246.    Defendants' infringement of the '205 patent has been and continues to be willful, at least as of the date of each Defendant's knowledge of the '205 patent as alleged above. Defendants have profited from and will continue to profit from their infringing activities. MPS has been and will continue to be damaged by Defendants' infringing activities. As a result, MPS is entitled to injunctive relief and damages adequate to compensate it for such infringement, in accordance with 35 U.S.C. §§ 271, 281, 283, and 284. The harm to MPS from Defendants' ongoing infringing activity is irreparable, is continuing, is not fully compensable by money damages, and will continue unless Defendants' infringing activities are enjoined.

## COUNT 4
### Infringement of U.S. Patent No. 12,142,085

247.    MPS incorporates the paragraphs above as if fully set forth herein.

248.    MPS is the assignee of all right, title and interest in the '085 Patent, a copy of which is attached as Exhibit 4.

249.    Upon information and belief, PRRS has infringed claims of the Patents-in-Suit, directly or indirectly, by making, using, offering to sell, selling, and/or importing automated parking monitoring and management systems/services, including PRRS's "ARC" system/services, for and/or at parking facilities of its customers throughout the United States, including parking facilities of customers located in this District.

250.    Upon information and belief, PRRS has directly infringed and continues to directly infringe, under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, claims of the '085 Patent by making, using, offering to sell, selling, and/or importing automated parking monitoring and management systems/services, including but not limited to, using such systems/services at parking facilities located in this District.

251.    Upon information and belief, such infringement includes PRRS's "Automated Recognition and Compliance" ("ARC") system/services. For example, upon information and belief, PRRS deploys its "ARC" system/services at parking facilities of its customers, and in so doing PRRS performs each step of claim 1 of the '085 Patent and therefore infringes at least that claim. A comparison of claim 1 of the '085 Patent to PRRS's ARC system/services is attached as Exhibit 14, which is incorporated herein by reference.

252.    Upon information and belief, by deploying its "ARC" system/services at parking facilities of its customers PRRS also infringes other claims of the '085 Patent, including claims depending from claim 1.

253.    Upon information and belief, PRRS knew of the '085 patent prior to the filing of

the Complaint as alleged above, and in any event no later than the date of filing of this Complaint.

254.    In the alternative, PRRS is liable for direct infringement under the theory of joint infringement. Upon information and belief, the automated parking monitoring and management systems/services provided by PRRS to its customers (including the ARC system/services) require at least that some combination of PRRS and its customer use such system/services and perform all the steps recited by claims of the '085 patent, including claim 1. Further, upon information and belief, to the extent such system/services provided by PRRS involves PRRS's customer performing some of the claimed steps and PRRS itself performing others, all of the claimed steps are nevertheless attributable to PRRS under the theory of joint infringement due to a contractual relationship between PRRS and its customer where PRRS directs its customer to perform the claimed steps that PRRS itself does not perform.

255.    Upon information and belief, PRRS also provides its customers with detailed instructions regarding how to perform the claimed steps, and resources for helping them to do so.

256.    In addition, upon information and belief PRRS contracts with its customers to condition receipt of the benefit of its automated parking monitoring and management systems/services on those customers' performance of any steps of using such systems/services that PRRS itself does not perform, according to terms prescribed by PRRS as part of its contract with the customer.

257.    Upon information and belief PRRS also maintains control over the use by its customers of the systems providing the parking monitoring, including the ARC system/services. For example, the "Facility Monitoring and Compliance Agreement Terms and Conditions" posted on PRRS' website at https://prrsparking.com/legal.html, states PRRS's customers' "use of

the ARC Software will be solely in accordance with the documentation [provided by PRRS], this Agreement, and such reasonable instructions as PRRS may provide from time to time." Exhibit 16, p.1.

258.    Exhibit 16 is a true and correct copy of the "Facility Monitoring and Compliance Agreement Terms and Conditions" that is posted on PRRS's website at https://prrsparking.com/legal.html.

259.    In the alternative, PRRS has been and is indirectly infringing the '085 Patent by actively inducing and/or contributing to the direct infringement by PRRS's customers of the '085 Patent in the United States, the State of Texas, and this District.

260.    Upon information and belief, PRRS knew of the '085 patent prior to the filing of the Complaint as alleged above, and in any event no later than the date of filing of this Complaint.

261.    Upon information and belief and as alleged above, PRRS's automated parking monitoring and management systems/services, including PRRS's "ARC" system/services, that are and/or have been in use at parking lots operated by PRRS customers, infringe claims of the '085 patent, including claim 1.  A comparison of claim 1 of the '085 Patent to PRRS's ARC system/services is attached as Exhibit 14, which is incorporated herein by reference.

262.    In the alternative, upon information and belief, PRRS has been and is now has been and is now in violation of 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of claims of the '085 Patent, including claim 1. Upon information and belief, PRRS specifically intended and was aware that the ordinary and customary use of its automated parking monitoring and management systems/services, including the ARC system/services, by its customers would infringe the '085 Patent.

263.    Upon information and belief, PRRS took active steps to encourage its customers to use and operate PRRS's automated parking monitoring and management systems/services at parking facilities of PRRS customers, despite knowing of the '085 Patent, in a manner PRRS knew to directly infringe claims of the '085 Patent, including claim 1. Further, upon information and belief PRRS provides product and/or service manuals and other technical information that cause its customers and/or other third parties to use and to operate the ARC system, for its ordinary and customary use, such that PRRS's customers and/or other third parties have directly infringed the '085 Patent, through the normal and customary use of PRRS's ARC system/services. For example, see Exhibit 16, p.1 ("Facility Monitoring and Compliance Agreement Terms and Conditions" posted on PRRS' website, stating that PRRS provides "ARC Software modules and related documentation" to its customers). Upon information and belief, such software and/or documentation instructs PRRS's customers to perform method(s) that infringe at least claim 1 of the '085 patent.

264.    Upon information and belief, PRRS's encouragement of its customers to use the ARC system/services according to its ordinary and customary usage resulted in PRRS's customers directly infringing claims of the '085 patent, including claim 1.

265.    In the alternative, PRRS also has been and is now in violation of 35 U.S.C. § 271(c) by contributing to infringement of claims of the '085 Patent, including claim 1, literally and/or under the doctrine of equivalents, by, among other things, selling, offering for sale, and/or importing within this District and elsewhere in the United States, automated parking monitoring and management systems/services, including ARC system/services, with knowledge of the '085 Patent and knowing that such automated parking monitoring and management systems/services

are especially made or especially adapted for use in the infringement of the '085 Patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

266.    Upon information and belief, by using its "ARC" system/services, PRRS also infringes, directly or indirectly, claims of the '085 patent other than claim 1, including claims depending from claim 1.

267.    Upon information and belief, LAZ Parking has been and is infringing the '085 Patent, including by knowingly, actively, and intentionally inducing the direct infringement by others of the '085 Patent in the United States, the State of Texas, and this District.

268.    Upon information and belief LAZ Parking has contracted with PRRS to deploy PRRS's automated parking monitoring and management systems/services, including PRRS's "ARC" system/services, at parking facilities operated by LAZ Parking located at 510 Guadalupe Street, 108 W. Gibson, 305 S. Congress Avenue, 400 Congress Avenue, 400 E 8th Street, 415 E 7th Street, and 99 Trinity Street in Austin, Texas as well as at additional locations within the United States.

269.    As alleged above, PRRS's automated parking monitoring and management systems/services, including PRRS's "ARC" system/services, that are and have been in use at parking lots operated by LAZ Parking, infringe claims of the '085 patent, including claim 1.  A comparison of claim 1 of the '085 Patent to PRRS's ARC system/services is attached as Exhibit 14, which is incorporated herein by reference.

270.    Upon information and belief, LAZ Parking knew of the '085 patent prior to the filing of the Complaint as alleged above, and in any event no later than the date of filing of this Complaint.

271.    Upon information and belief, LAZ Parking specifically intended and was aware that the ordinary and customary use PRRS's "ARC" system/services at LAZ Parking-operated facilities would infringe the '085 Patent, including claim 1.

272.    Upon information and belief, LAZ Parking additionally took active steps to encourage PRRS to use and operate PRRS's ARC system/services at LAZ Parking's facilities, despite knowing of the '085 Patent, in a manner LAZ Parking knew to directly infringe claims of the '085 Patent, including claim 1.

273.    Upon information and belief LAZ Parking knew that the normal and customary use by PRRS of PRRS's ARC system/services at LAZ Parking-operated lots directly infringed the '085 Patent.

274.    Upon information and belief, LAZ Parking has induced and continues to induce infringement of claims of the '085 patent other than claim 1, including claims depending from claim 1.

275.    In the alternative, LAZ Parking is liable for direct infringement, including under the theory of joint infringement.

276.    Upon information and belief, automated parking monitoring and management systems/services provided by PRRS to LAZ Parking, including the ARC system/services, require at least that some combination of PRRS, LAZ Parking, and/or others in contract with LAZ Parking use such systems/services and perform all the steps recited by claims of the '085 Patent, including claim 1. Further, upon information and belief, to the extent use of such systems/services involves PRRS itself or another LAZ Parking contractee performing one or more of the claimed steps, all of the claimed steps are nevertheless attributable to LAZ Parking under the theory of joint infringement due to a contractual relationship between LAZ Parking

and its contractee(s) that directs the contractee (e.g., PRRS) to perform, and also provides instructions regarding how to perform, the claimed steps that LAZ Parking itself does not perform.

277.    In addition, upon information and belief the contract LAZ Parking entered into with PRRS conditions payment for PRRS's automated parking monitoring and management systems/services on PRRS's performance of any steps of the contracted-for ARC system/services that LAZ Parking itself does not perform.

278.    Defendants' infringement of the '085 patent is ongoing.

279.    Defendants' infringement of the '085 patent has been and continues to be willful, at least as of the date of each Defendant's knowledge of the '085 patent as alleged above. Defendants have profited from and will continue to profit from their infringing activities. MPS has been and will continue to be damaged by Defendants' infringing activities. As a result, MPS is entitled to injunctive relief and damages adequate to compensate it for such infringement, in accordance with 35 U.S.C. §§ 271, 281, 283, and 284. The harm to MPS from Defendants' ongoing infringing activity is irreparable, is continuing, is not fully compensable by money damages, and will continue unless Defendants' infringing activities are enjoined.

## COUNT 5
### Infringement of U.S. Patent No. 12,249,187

280.    MPS incorporates the paragraphs above as if fully set forth herein.

281.    MPS is the assignee of all right, title and interest in the '187 Patent, a copy of which is attached as Exhibit 5.

282.    Upon information and belief, PRRS has infringed claims of the Patents-in-Suit, directly or indirectly, by making, using, offering to sell, selling, and/or importing automated parking monitoring and management systems/services, including PRRS's "ARC"

system/services, for and/or at parking facilities of its customers throughout the United States, including parking facilities of customers located in this District.

283.    Upon information and belief, PRRS has directly infringed and continues to directly infringe, under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, claims of the '187 Patent by making, using, offering to sell, selling, and/or importing automated parking monitoring and management systems/services, including but not limited to, using such systems/services at parking facilities located in this District.

284.    Upon information and belief, such infringement includes PRRS's "Automated Recognition and Compliance" ("ARC") system/services. For example, upon information and belief, PRRS deploys its "ARC" system/services at parking facilities of its customers, and in so doing PRRS performs each step of claim 11 of the '187 Patent and therefore infringes at least that claim. A comparison of claim 11 of the '187 Patent to PRRS's ARC system/services is attached as Exhibit 15, which is incorporated herein by reference.

285.    Upon information and belief, by deploying its "ARC" system/services at parking facilities of its customers PRRS also infringes other claims of the '187 Patent, including claims depending from claim 11.

286.    Upon information and belief, PRRS knew of the '187 patent prior to the filing of the Complaint as alleged above, and in any event no later than the date of filing of this Complaint.

287.    In the alternative, PRRS is liable for direct infringement under the theory of joint infringement. Upon information and belief, the automated parking monitoring and management systems/services provided by PRRS to its customers (including the ARC system/services) require at least that some combination of PRRS and its customer use such system/services and

perform all the steps recited by claims of the '187 patent, including claim 11. Further, upon

information and belief, to the extent such system/services provided by PRRS involves PRRS's

customer performing some of the claimed steps and PRRS itself performing others, all of the

claimed steps are nevertheless attributable to PRRS under the theory of joint infringement due to

a contractual relationship between PRRS and its customer where PRRS directs its customer to

perform the claimed steps that PRRS itself does not perform.

288.    Upon information and belief, PRRS also provides its customers with detailed

instructions regarding how to perform the claimed steps, and resources for helping them to do so.

289.    In addition, upon information and belief PRRS contracts with its customers to

condition receipt of the benefit of its automated parking monitoring and management

systems/services on those customers' performance of any steps of using such systems/services

that PRRS itself does not perform, according to terms prescribed by PRRS as part of its contract

with the customer.

290.    Upon information and belief PRRS also maintains control over the use by its

customers of the systems providing the parking monitoring, including the ARC system/services.

For example, the "Facility Monitoring and Compliance Agreement Terms and Conditions"

posted on PRRS' website at https://prrsparking.com/legal.html, states PRRS's customers' "use of

the ARC Software will be solely in accordance with the documentation [provided by PRRS], this

Agreement, and such reasonable instructions as PRRS may provide from time to time." Exhibit

16, p.1.

291.    Exhibit 16 is a true and correct copy of the "Facility Monitoring and Compliance

Agreement Terms and Conditions" that is posted on PRRS's website at

https://prrsparking.com/legal.html.

292.     In the alternative, PRRS has been and is indirectly infringing the '187 Patent by actively inducing and/or contributing to the direct infringement by PRRS's customers of the '187 Patent in the United States, the State of Texas, and this District.

293.     Upon information and belief, PRRS knew of the '187 patent prior to the filing of the Complaint as alleged above, and in any event no later than the date of filing of this Complaint.

294.     Upon information and belief and as alleged above, PRRS's automated parking monitoring and management systems/services, including PRRS's "ARC" system/services, that are and/or have been in use at parking lots operated by PRRS customers, infringe claims of the '187 patent, including claim 11.  A comparison of claim 11 of the '187 Patent to PRRS's ARC system/services is attached as Exhibit 15, which is incorporated herein by reference.

295.     In the alternative, upon information and belief, PRRS has been and is now has been and is now in violation of 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of claims of the '187 Patent, including claim 11. Upon information and belief, PRRS specifically intended and was aware that the ordinary and customary use of its automated parking monitoring and management systems/services, including the ARC system/services, by its customers would infringe the '187 Patent.

296.     Upon information and belief, PRRS took active steps to encourage its customers to use and operate PRRS's automated parking monitoring and management systems/services at parking facilities of PRRS customers, despite knowing of the '187 Patent, in a manner PRRS knew to directly infringe claims of the '187 Patent, including claim 11. Further, upon information and belief PRRS provides product and/or service manuals and other technical information that cause its customers and/or other third parties to use and to operate the ARC

system, for its ordinary and customary use, such that PRRS's customers and/or other third parties have directly infringed the '187 Patent, through the normal and customary use of PRRS's ARC system/services. For example, see Exhibit 16, p.1 ("Facility Monitoring and Compliance Agreement Terms and Conditions" posted on PRRS' website, stating that PRRS provides "ARC Software modules and related documentation" to its customers). Upon information and belief, such software and/or documentation instructs PRRS's customers to perform method(s) that infringe at least claim 11 of the '187 patent.

297.    Upon information and belief, PRRS's encouragement of its customers to use the ARC system/services according to its ordinary and customary usage resulted in PRRS's customers directly infringing claims of the '187 patent, including claim 11.

298.    In the alternative, PRRS also has been and is now in violation of 35 U.S.C. § 271(c) by contributing to infringement of claims of the '187 Patent, including claim 11, literally and/or under the doctrine of equivalents, by, among other things, selling, offering for sale, and/or importing within this District and elsewhere in the United States, automated parking monitoring and management systems/services, including ARC system/services, with knowledge of the '187 Patent and knowing that such automated parking monitoring and management systems/services are especially made or especially adapted for use in the infringement of the '187 Patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

299.    Upon information and belief, by using its "ARC" system/services, PRRS also infringes, directly or indirectly, claims of the '187 patent other than claim 11, including claims depending from claim 11.

300.    Upon information and belief, LAZ Parking has been and is infringing the '187 Patent, including by knowingly, actively, and intentionally inducing the direct infringement by

others of the '187 Patent in the United States, the State of Texas, and this District.

301.    Upon information and belief LAZ Parking has contracted with PRRS to deploy PRRS's automated parking monitoring and management systems/services, including PRRS's "ARC" system/services, at parking facilities operated by LAZ Parking located at 510 Guadalupe Street, 108 W. Gibson, 305 S. Congress Avenue, 400 Congress Avenue, 400 E 8th Street, 415 E 7th Street, and 99 Trinity Street in Austin, Texas as well as at additional locations within the United States.

302.    As alleged above, PRRS's automated parking monitoring and management systems/services, including PRRS's "ARC" system/services, that are and have been in use at parking lots operated by LAZ Parking, infringe claims of the '187 patent, including claim 11.  A comparison of claim 11 of the '187 Patent to PRRS's ARC system/services is attached as Exhibit 15, which is incorporated herein by reference.

303.    Upon information and belief, LAZ Parking knew of the '187 patent prior to the filing of the Complaint as alleged above, and in any event no later than the date of filing of this Complaint.

304.    Upon information and belief, LAZ Parking specifically intended and was aware that the ordinary and customary use PRRS's "ARC" system/services at LAZ Parking-operated facilities would infringe the '187 Patent, including claim 11.

305.    Upon information and belief, LAZ Parking additionally took active steps to encourage PRRS to use and operate PRRS's ARC system/services at LAZ Parking's facilities, despite knowing of the '187 Patent, in a manner LAZ Parking knew to directly infringe claims of the '187 Patent, including claim 11.

306.    Upon information and belief LAZ Parking knew that the normal and customary

use by PRRS of PRRS's ARC system/services at LAZ Parking-operated lots directly infringed the '187 Patent.

307.    Upon information and belief, LAZ Parking has induced and continues to induce infringement of claims of the '187 patent other than claim 11, including claims depending from claim 11.

308.    In the alternative, LAZ Parking is liable for direct infringement, including under the theory of joint infringement.

309.    Upon information and belief, automated parking monitoring and management systems/services provided by PRRS to LAZ Parking, including the ARC system/services, require at least that some combination of PRRS, LAZ Parking, and/or others in contract with LAZ Parking use such systems/services and perform all the steps recited by claims of the '187 Patent, including claim 11. Further, upon information and belief, to the extent use of such systems/services involves PRRS itself or another LAZ Parking contractee performing one or more of the claimed steps, all of the claimed steps are nevertheless attributable to LAZ Parking under the theory of joint infringement due to a contractual relationship between LAZ Parking and its contractee(s) that directs the contractee (e.g., PRRS) to perform, and also provides instructions regarding how to perform, the claimed steps that LAZ Parking itself does not perform.

310.    In addition, upon information and belief the contract LAZ Parking entered into with PRRS conditions payment for PRRS's automated parking monitoring and management systems/services on PRRS's performance of any steps of the contracted-for ARC system/services that LAZ Parking itself does not perform.

311.    Defendants' infringement of the '187 patent is ongoing.

312. Defendants' infringement of the '187 patent has been and continues to be willful, at least as of the date of each Defendant's knowledge of the '187 patent as alleged above. Defendants have profited from and will continue to profit from their infringing activities. MPS has been and will continue to be damaged by Defendants' infringing activities. As a result, MPS is entitled to injunctive relief and damages adequate to compensate it for such infringement, in accordance with 35 U.S.C. §§ 271, 281, 283, and 284. The harm to MPS from Defendants' ongoing infringing activity is irreparable, is continuing, is not fully compensable by money damages, and will continue unless Defendants' infringing activities are enjoined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff MPS requests that this Court grant the following relief:

A. A judgment that Defendants have infringed each of the Patents-in-Suit;

B. An order restraining and enjoining Defendants, their officers, agents, attorneys and employees, and those acting in privity or concert with Defendants, from further infringing the Patents-in-Suit;

C. A judgment and order requiring Defendants to pay all appropriate damages under 35 U.S.C. § 284, including prejudgment and post-judgment interest and including damages arising from Defendants' past and continuing infringement up until the date Defendants are finally and permanently enjoined from further infringement;

D. A determination that Defendants' infringement of the Patents-in-Suit has been willful and an award of treble damages to MPS pursuant to 35 U.S.C. § 284;

E. A judgment and order requiring Defendants to pay MPS's attorney's fees incurred in connection with this lawsuit, if this case is found to be exceptional as provided by 35 U.S.C. §

285;

    F.      An order awarding MPS costs and expenses in this action; and

    G.      Such other and further relief as the Court may deem just and equitable.

### **DEMAND FOR TRIAL BY JURY**

Plaintiff MPS demands a trial by jury on all issues that are so triable.


Dated: June 9, 2025          Respectfully submitted,


                          */s/ Deron R. Dacus*
                          Deron R. Dacus
                          State Bar No.  00790553
                          The Dacus Firm, P.C.
                          821 ESE Loop 323, Suite 430
                          Tyler, TX 75701
                          Phone/Fax: (903) 705-1117
                          ddacus@dacusfirm.com

                          Philip P. Caspers (pro hac vice forthcoming)
                          Samuel A. Hamer (pro hac vice forthcoming)
                          Peter M. Kohlhepp (pro hac vice forthcoming)
                          CARLSON, CASPERS, VANDENBURGH & LINDQUIST, P.A.
                          225 South Sixth Street, Suite 4200
                          Minneapolis, MN 55402
                          Phone: (612) 436-9600
                          Facsimile: (612) 436-9605
                          PCaspers@carlsoncaspers.com
                          Shamer@carlsoncaspers.com
                          PKohlhepp@carlsoncaspers.com

                          ***Attorneys for Plaintiff Municipal Parking Services, Inc.***